UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DRESSER-RAND COMPANY,<br><br>     Plaintiff,<br><br>  v.<br><br>G. CURTIS JONES, JEFFREY KING,<br>ALBERT E. WADSWORTH, IV, AND<br>GLOBAL POWER SPECIALIST, INC.,<br><br>     Defendants. | Civil Action No. _____ |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Dresser-Rand Company ("Dresser-Rand," "Plaintiff," or the "Company"), by and through its undersigned counsel, hereby brings the following Complaint against Defendants G. Curtis Jones ("Jones"), Jeffrey King ("King"), Albert E. Wadsworth, IV ("Wadsworth"), and together with Jones and King, the "Individual Defendants"), and Global Power Specialist, Inc. ("Global Power") (collectively, "Defendants") seeking injunctive relief and monetary damages.

## PRELIMINARY STATEMENT

1.     Defendants are individuals, and the corporation they founded, who chose not to compete on a level playing field. While managerial employees at Dresser-Rand, Jones and King, along with Wadsworth, decided to create Global Power to compete with Dresser-Rand. Not content to compete in good faith, Jones and King, for the benefit of all Defendants, used their Company work computers to download thousands of Dresser-Rand files to help them set up their new company. These files included Dresser-Rand's trade secrets such as a proprietary pricing model, information on many bid proposals, scores of operating procedures for actually doing work if a bid is accepted, and strategic business plans, which have been developed by the

Company at considerable cost and are protected from unauthorized use.  In furtherance of their

scheme to unlawfully compete against Dresser-Rand, as just one example of their deceptive

conduct, Defendants submitted at least one bid proposal to a potential Dresser-Rand client on

behalf of Global Power while Jones and King were still employed by Dresser-Rand and were

preparing a bid proposal to the same client on behalf of Dresser-Rand.  Defendants have

continued to unfairly compete with Dresser-Rand by bidding for additional work by using the

Company's pricing and bidding information and other proprietary information stolen by Jones

and King.  Dresser-Rand brings this action because Defendants should not be permitted to

continue to benefit from their unlawful actions and the Company should be compensated for

certain harm that already has been done.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Dresser-

Rand's claim pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et seq.*

(Count IV below), arises under a law of the United States.

3.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. §

1332.  This is an action between citizens of different states; Dresser-Rand seeks actual,

compensatory and punitive damages with a present monetary value, exclusive of costs and

interest, well in excess of $75,000; and there exists complete diversity of citizenship.  Equally so,

this Court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367

because they are related to the CFAA claim in that they form part of the same case or

controversy.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a

substantial part of the events or omissions giving rise to this action occurred in this district since

Defendants Jones and King were based in Horsham, Pennsylvania when they worked for Dresser-Rand.

## THE PARTIES

5.     Plaintiff Dresser-Rand Company is a New York partnership with a principal place of business in the State of New York.  Dresser-Rand regularly conducts business within this district and has a regional facility located in Horsham, Pennsylvania.  Dresser-Rand Company is a partnership between Dresser-Rand Group Inc. ("DRGI") and Dresser-Rand LLC ("DRL").  DRGI is a publicly-traded Delaware corporation with a principal place of business in the state of Texas.  DRL is a Delaware limited liability company with a principal place of business in state of Texas.

6.     Defendant G. Curtis Jones is an individual and a citizen of the State of North Carolina, residing at 4915 Arendell Street, Morehead City, NC 28557.

7.     Defendant Jeffrey King is an individual and a citizen of the State of North Carolina, residing at 3804 Friendship Patterson Mill Road, Burlington, North Carolina 27215.

8.     Defendant Albert Wadsworth, IV, is an individual and a citizen of the state of Florida, residing at 1120 North Atlantic Drive, Lantana, Florida 33462.

9.     Defendant Global Power Specialist, Inc. is a Florida corporation with its principal place of business in the State of Florida.

## FACTUAL ALLEGATIONS

**A.     Dresser-Rand Works In A Highly Competitive Industry And Guards Its Trade Secrets.**

10.     Dresser-Rand is a corporation in the business of providing a wide range of technology, products and services used for developing energy and natural resources.

3

11.     Dresser-Rand's business includes a field services operation, which maintains and services industrial equipment for Dresser-Rand clients who own or operate facilities such as power plants, industrial plants, and refineries.  Dresser-Rand's field services operation includes performing maintenance on Dresser-Rand equipment previously installed at the client site, as well as maintaining equipment manufactured by other companies.

12.     For example, Dresser-Rand services equipment for an oil company that compresses air to push oil through a pipeline.  As another example, Dresser-Rand services client equipment that uses steam to generate electricity.

13.     The field services line of business is extremely competitive, particularly as to price.

14.     In support of the field services business, Dresser-Rand has invested a significant amount of money and resources to developing pricing and staffing formulas, operating procedures, and other information to give it a competitive advantage in winning work from clients and performing that work in a manner that leads to repeat business.

15.     For example, Dresser-Rand has developed a computer program called Job Tracker on a Microsoft Excel platform that computes various estimated costs and profit margins based on proprietary formulas that Dresser-Rand has developed.  Dresser-Rand uses Job Tracker to create estimates for profit margins for specific projects, which in turn inform the Company's bidding strategy.  Due to the sensitive nature of this program, Job Tracker is password-protected and access to it is limited to legitimate business purposes.

16.     If a competitor were to know Dresser-Rands's precise costs and processes for calculating bids through Job Tracker, it would have a substantial unfair advantage when setting prices and bidding for contracts.

4

17.     As another example, Dresser-Rand, through many years of experience, has developed confidential processes for maintaining and servicing certain kinds of equipment, which gives the Company a competitive advantage through superior service.

18.     As one final example, Dresser-Rand has developed Terms and Conditions and pricing information which give the Company a competitive advantage when it submits bids and proposals for projects.

19.     Due to the competitive nature of the business and the considerable effort and expense devoted by Dresser-Rand to developing its trade secrets and confidential information, Dresser-Rand takes appropriate steps to protect its trade secrets and confidential information from unauthorized disclosure by restricting access to employees who have a legitimate need for the information.

20.     In addition to the restrictions it has in place to limit access to its trade secrets and confidential information, Dresser-Rand also has a Code of Conduct setting forth employees' obligations.  Among other provisions, the Code of Conduct states:

a.     "We comply with all laws, rules, and regulations of the places where we do business."

b.     "We conduct our business affairs in the best interests of the Company and should avoid situations where our private interests interfere in any way with our Company's interests…. An example of a conflict of interest is conduct which:  [a.] Results in your competing against the Company in any business activity[; b.] Causes you to misuse Company resources[; and c.] Influences you to take action not in the best interests of the Company that you otherwise would have avoided."

c.     "We do not personally take advantage of opportunities that are discovered through the use of Company property . . . ."

21.     Dresser-Rand also requires certain employees to enter into an Employment Agreement Relating to Intellectual Property ("Intellectual Property Agreement") as a condition of their employment.

22.     Dresser-Rand also has in place clear policies regarding protecting its trade secrets and confidential information and limiting access to its computers and property for authorized purposes only.

**B.     Jones Was A Dresser-Rand Manager With Regular Access To Its Trade Secrets.**

23.     Dresser-Rand hired Jones in or about April 1998.

24.     Prior to his final position, Jones held the positions of Mechanic and Project Manager with Dresser-Rand.

25.     As a condition of his employment, Jones entered into an "Intellectual Property Agreement" on April 7, 1998.

26.     By entering into the Intellectual Property Agreement, Jones, amongst other commitments, agreed that:

> During my employment and hereafter, I shall keep secret and confidential and not disclose to any unauthorized person, any secret or confidential information of the COMPANY that I obtain as a result of or during my employment.
>
> []I shall return to the COMPANY on the termination of my employment or on request by the COMPANY all documents and materials belonging to the COMPANY.

27.     At the time of his resignation from the Company, Jones held the position of Regional Service Manager ("RSM") for the East Region.  Jones was based out of Dresser-Rand's Horsham, Pennsylvania facility, and he maintained an office in that facility.

28.    Throughout his employment, when there was a legitimate purpose for such access, Dresser-Rand gave Jones access to its trade secrets and confidential information so that he could use that information for the benefit of Dresser-Rand.

29.    As RSM for the East Region, Jones's job responsibilities included managing all field service work from Maine to Virginia, overseeing the preparation of bid proposals and projects within the region, managing Project Managers and other personnel that reported to him, maintaining client relationships on behalf of Dresser-Rand, and growing the business within the region.

30.    As RSM for the East Region, Jones had knowledge of all bid proposals submitted by Dresser-Rand to potential clients in the East Region.  In addition, Jones had knowledge of bid proposals in other regions.  This knowledge included trade secrets and confidential information that was used to prepare the bid proposals.

31.    Jones also had access to Job Trackers for bids in his region and was expected to utilize Job Trackers for the legitimate business needs of Dresser-Rand.

32.    Jones also served on the committee of a nationwide Company business initiative for the Power Generation market.  Through his participation in this committee, Jones had access to high-level strategy memoranda, confidential bid proposal information, and other sensitive trade secrets as part of Dresser-Rand's efforts to increase its presence in that market.

33.    At all times that Dresser-Rand employed Jones, he owed Dresser-Rand a fiduciary duty and duty of loyalty.

34.    Jones agreed to comply with Dresser-Rand's Code of Conduct and other internal policies.

**C.     King Was A Dresser-Rand Manager With Regular Access To Its Trade Secrets.**

35.     Dresser-Rand hired King in or about August 2007 for the position of Project Manager, working within the East Region.

36.     As a Project Manager in the East Region, King conducted business at Dresser-Rand's Horsham, Pennsylvania facility.

37.     Throughout his employment, when there was a legitimate purpose for such access, Dresser-Rand gave King access to its trade secrets and confidential information so that he could use that information for the benefit of Dresser-Rand.

38.     As Project Manager, King's job responsibilities included supervising projects from inception to completion, including supervising employees working on those projects, preparing bid proposals for projects, and communicating with clients on behalf and for the benefit of Dresser-Rand.

39.     King had access to Job Trackers for bid proposals that he prepared and was expected to utilize Job Trackers for the legitimate business needs of Dresser-Rand.

40.     At all times that Dresser-Rand employed him, King owed Dresser-Rand a fiduciary duty and duty of loyalty.

41.     King agreed to comply with Dresser-Rand's Code of Conduct and other internal policies.

**D.     Defendants Conspired To Form A Company To Compete With Dresser-Rand In The Winter Of 2009 And 2010.**

42.     Upon information and belief, in or about December 2009, Jones and King entered into an agreement with Wadsworth to form a new business that would compete directly with Dresser-Rand.  Wadsworth is the brother-in-law of Jones.

43.     Upon information and belief, in December 2009, the Individual Defendants bid on and/or performed work for clients for their own benefit and not on behalf of Dresser-Rand.  Jones and King did not inform Dresser-Rand of the business opportunities they took for their own benefit.  Jones and King bid on and/or performed this work for their own benefit while they remained active employees of Dresser-Rand.

44.     Upon information and belief, the Individual Defendants bid on and/or performed the above-mentioned work in, among other places, Eastern Pennsylvania.

45.     Upon information and belief, beginning in December 2009 and continuing until King resigned his employment, the Individual Defendants entered into an agreement to misappropriate Dresser-Rand's trade secrets and confidential information for their own benefit.  Upon information and belief, the Individual Defendants concluded that it would be substantially cheaper and easier for Global Power to succeed if they took Dresser-Rand property for their own benefit, instead of having to invest the time and resources to creating processes, programs, documents, pricing models, strategic plans, and formulas for Global Power.  At the time that the Individual Defendants agreed to take Dresser-Rand's property, including its trade secrets and confidential information, they knew that they did not have authority to access or use this information for their own benefit.  The Individual Defendants never disclosed to Dresser-Rand their purpose for accessing or taking this property because they knew that Dresser-Rand would not authorize such access or use.

46.     For example, Jones and King used the Company's computers that they were authorized to use for legitimate Dresser-Rand business purposes to instead access and copy Dresser-Rand's property, including its trade secrets and confidential information.  Jones and King did not have authority to use these computers for the purpose of downloading Dresser-Rand

property for their own benefit.  Jones and King also did not have authority to use these computers for the purpose of creating or editing Global Power documents.

47.     On several occasions, but at separate times, Jones and King used the same external devices to access and download Dresser-Rand's property, including its trade secrets and confidential information.

48.     Upon information and belief, Jones and King deleted Dresser-Rand files that were stored on the Company's network drive for no legitimate purpose in an attempt to hide their actions and injure the Company.

49.     Upon information and belief, in the Winter of 2009 and 2010, Defendants prepared and submitted multiple bid proposals on behalf of Global Power for projects without informing Dresser-Rand.

50.     Upon information and belief, Jones and King concurrently prepared and submitted multiple bid proposals on behalf of Dresser-Rand for the same projects for which Defendants prepared and submitted bid proposals.

51.     On or about January 20, 2010, Global Power filed its Articles of Incorporation ("Articles") in the state of Florida, while Jones and King were still employed by Dresser-Rand.  The Articles identified Wadsworth as the sole director and officer of Global Power.  However, upon information and belief, Jones and King also were founders of Global Power.

**E.      Dresser-Rand Learned Of Some Of Jones's Unlawful Conduct And Suspended Him Pending Investigation.**

52.     Near the end of January 2010, Dresser-Rand management became aware of rumors that Jones intended to compete against the Company and had in fact taken steps to so compete.

53.     On February 3, 2010, Jones approached Bill Velekei ("Velekei"), the Branch Manager for the East Region, and acknowledged that he had directly competed against Dresser-Rand and was planning to continue to compete against Dresser-Rand.

54.     Velekei told Jones that his conduct was not appropriate.

55.     Velekei immediately reported this information to Chip Jones ("C. Jones"), Director for Services in the Mid-Atlantic Region, and Jones's direct supervisor.

56.     The next day, on February 4, 2010, C. Jones and other Dresser-Rand management personnel conferred regarding Jones's conduct.  Based on that discussion, C. Jones and Velekei intended to confront Jones the next day regarding his actions to determine the facts. Jones had represented to Velekei that he was at his home in North Carolina.  Therefore, C. Jones and Velekei intended to meet with Jones at Dresser-Rand's Chesapeake, Virginia facility.

57.     On the morning of February 5, 2010, C. Jones called Jones on his cellular phone to arrange the meeting for that day.

58.     At the beginning of the telephone call, Jones represented that he was spending his day working on quotes for Dresser-Rand.

59.     When C. Jones requested that he come to the Chesapeake facility, Jones claimed that he was in Western Pennsylvania working on quotes for the Company's clients and would be unable to come to Chesapeake.  When asked which clients he was working on quotes for, Jones responded evasively and did not identify a client.

60.     C. Jones next proposed that they meet at the Horsham, Pennsylvania facility since that location was closer to Western Pennsylvania.

61.     Jones then claimed that he could not meet in Horsham either, due to poor weather conditions.  When C. Jones told Jones that he had reviewed the weather in Pennsylvania

and found no conditions that would prevent Jones from driving to Horsham, Jones finally admitted that he was in fact in Rochester, New York.

62.     Jones then initially claimed that he was in Rochester to work on a quote for a client on behalf of Dresser-Rand.  When C. Jones noted that he was unaware of any outstanding quotes for that client, Jones responded evasively and provided no substantive response.

63.     C. Jones directed Jones to drive from Rochester to Horsham to meet, but Jones refused.

64.     In response, C. Jones suggested that they could possibly conduct the interview over the phone but that he needed to locate other people to participate in the call.  C. Jones said that he would call Jones back at 10:30 a.m.

65.     Jones claimed that he was unavailable to participate in a call at 10:30 a.m. because he had an appointment but did not specify with whom.  When C. Jones asked about the appointment, Jones claimed that it was with a client.

66.     C. Jones then asked Jones to identify the client so that they could call the client together and change the time of the appointment.

67.     Jones then admitted that he was in fact meeting Wadsworth, his brother-in-law (and a founder of Global Power), and was picking him up at the airport at 10:30 a.m.

68.     Jones refused to postpone picking up Wadsworth at the airport, despite the request of his direct supervisor.

69.     Jones ended the call abruptly.

70.     C. Jones made several more telephone calls to Jones that morning, but Jones did not answer.

71.     Finally, after 12:00 p.m., Jones answered C. Jones's telephone call.  Also participating in the call were Velekei and Company Human Resources Director, Gayla George.

72.     C. Jones asked Jones if he had been involved in starting a new business.

73.     Jones denied any such involvement.

74.     C. Jones asked Jones if he had discussed a new business with Dresser-Rand employees.

75.     Jones denied having any such conversation.

76.     C. Jones asked Jones if he had shown Dresser-Rand employees documents for a new business.

77.     Jones denied doing so.

78.     At the end of the conversation, C. Jones suspended Jones pending investigation.

79.     C. Jones arranged for a Dresser-Rand Account Manager to go to the hotel in Rochester to retrieve Jones's Dresser-Rand computer, phone, and keys.

80.     Jones did not meet the Account Manager for more than two hours after he was directed to immediately return the Dresser-Rand property.

81.     Upon information and belief, Jones delayed the meeting so he could copy Dresser-Rand property for an unauthorized purpose and attempt to destroy evidence and information demonstrating his dishonest and unlawful conduct.

82.     On February 8, 2010, Jones called C. Jones to demand an update on the status of the investigation.  Jones demanded that Dresser-Rand decide whether to terminate his employment or reinstate him.  Jones insisted that Dresser-Rand must decide his employment status within an hour of his telephone conversation with C. Jones.

83.     C. Jones informed him that Dresser-Rand's investigation was ongoing and that it would not conclude within Jones's demanded timeframe.

84.     On February 9, 2010, Jones called C. Jones again for an update on the investigation. When C. Jones explained that the investigation remained ongoing, Jones resigned his employment from Dresser-Rand, effective immediately.

**F.    King Entered Into A Retention Bonus Agreement With Dresser-Rand, Only To Then Resign And Join Global Power After The Payment Cleared His Account.**

85.     As part of its response to Jones's actions, Dresser-Rand decided to enter into Retention Agreements with employees it valued that it believed Jones might target to join his new company.

86.     Dresser-Rand identified King as one of those employees.

87.     On February 8, 2010, King executed a Retention Agreement with the Company. As a result of entering into the Retention Agreement, King received a $5,000.00 bonus for his supposed continued loyalty to the Company.

88.     Dresser-Rand now knows that King had no intention of abiding by his fiduciary duties and had been competing against Dresser-Rand, along with the other Defendants.

89.     As set forth below, King accessed and downloaded to an external device over 1,000 Dresser-Rand files after he entered into the Retention Agreement. King had no legitimate purpose for downloading these files.

90.     Upon information and belief, King actively participated in the management and operations of Global Power in February 2010, including submitting bid proposals for projects that he had worked on for Dresser-Rand or for which he had unlawfully downloaded Dresser-Rand's bid proposal to give Global Power an unfair competitive advantage.

91.     On February 26, 2010, King resigned his employment from Dresser-Rand.

**G.    Dresser-Rand Learned About The Mass Misappropriation Of Trade Secrets And Taking Of Business Information Through A Forensics Examination Of The Company's Computers That Had Been Used By Jones and King.**

92.    After Jones's and King's resignations, Dresser-Rand conducted a forensics examination of their work computers.  Although the examination is ongoing, Dresser-Rand has discovered additional evidence of misappropriation of Company property and other unlawful activity.

93.    From December 2009 until their resignations, Jones and King accessed and downloaded Dresser-Rand files onto external hard drives and thumb drives.

94.    There was no legitimate purpose for them to download the quantity and types of files they downloaded.

95.    For example, on December 30, 2009, King downloaded over 1,700 files onto an external device from his work computer.  These files contained trade secrets and confidential information, including Job Trackers, bid proposals for current clients, procedures for servicing equipment, the specifications for Dresser-Rand equipment, and other sensitive information.

96.    Throughout the remainder of his employment, King continued to download Dresser-Rand property from his work computer to external devices, including on February 25, 2010, the day before his resignation.

97.    As another example, on January 13, 2010, Jones downloaded over 3,000 files onto an external device from his work computer.  These files contained trade secrets and confidential information, including Job Trackers, bids for current clients, procedures for servicing equipment, the specifications for Dresser-Rand equipment, and other sensitive information.

98.     Throughout the remainder of his employment, Jones continued to download Dresser-Rand property from his work computer to external devices, including on February 5, 2010, which was Jones's last day as an active employee.

99.     Dresser-Rand's forensics investigation also revealed that Jones created and maintained Global Power documents on his work computer.  Specifically, Jones's computer contained a folder titled "Quote," which contained, among other things, a bid by Global Power to one of Dresser-Rand's significant clients, the Global Power Rate Sheet, and the Global Power Specialist Terms and Conditions.

100.    The Global Power Rate Sheet and Global Power Terms and Conditions documents located on Jones's work computer are substantively the same in format as Dresser-Rand's Rate Sheets and Terms and Conditions.

101.    As to the bid documents in the "Quote" folder, at the same time that Global Power submitted this bid to the client, Jones and King were responsible for preparing a bid proposal to the very same client for Dresser-Rand.

102.    Upon information and belief, King had represented to a Company client that he had separated from Dresser-Rand at the time Global Power submitted its bid proposal.  In fact, King was an active Dresser-Rand employee at the time.

103.    Upon information and belief, in an attempt to win bids for projects, Defendants falsely represented to this and other Company clients that current Dresser-Rand employees worked for Global Power.  In fact, the employees identified by Defendants were active Dresser-Rand employees who were not employed by Global Power.

104.    Upon information and belief, seeking to cover their tracks and impede the Company's business, Jones and King also deleted files from the Dresser-Rand network drive for

no legitimate purpose.  Jones and King deleted the files to benefit Defendants and to injure Dresser-Rand.

105.    Dresser-Rand's investigation also revealed that Jones and King had downloaded Dresser-Rand bid proposals for projects for which Global Power subsequently submitted its own bids.

106.    Upon information and belief, Defendants used the Dresser-Rand bid proposals illegitimately accessed and taken by Jones and King to improve the competitive position of their own bids submitted by Global Power.

107.    Dresser-Rand's investigation is still ongoing into Defendants' unlawful acts.

## H.   Dresser-Rand Gave Defendants An Opportunity To Explain And Defend Their Actions But Received No Bona Fide Response.

108.    On April 27, 2010, counsel for Dresser-Rand sent a letter to each Defendant notifying them of the Company's concerns, making them aware of their preservation obligations, and giving them an opportunity to provide an explanation for their actions.

109.    On April 30, 2010, counsel for Defendants contacted counsel for Dresser-Rand and requested until May 3, 2010 to respond to the letter.

110.    On May 3, 2010, despite leaving several voicemails for Defendants' counsel, counsel for Defendants never contacted Dresser-Rand's counsel.

111.    To date, Dresser-Rand has not received any explanation for Defendants' actions.

## COUNT I

### MISAPPROPRIATION OF TRADE SECRETS – 12 Pa.C.S.A. § 5302
### (All Defendants)

112. Paragraphs 1 through 111 are incorporated by reference as if fully set forth herein.

113. Defendants have misappropriated Dresser-Rand's trade secrets and confidential information without the express or implied consent of Dresser-Rand.

114. Jones and King, while employees of Dresser-Rand, accessed and downloaded from their work computers thousands of files to be used for the benefit of Defendants. These files contained trade secrets and confidential information, including, but not limited to, Job Trackers, bid proposals, and processes.

115. Jones and King also have knowledge of competitive bidding information and other trade secrets and confidential information that they have used or disclosed, or are likely to use or disclose, in performing their duties for Global Power.

116. Dresser-Rand has expended substantial resources in developing its trade secrets and confidential information for its exclusive benefit. Dresser-Rand's trade secrets and confidential information derive economic value from the fact that they are neither generally known nor readily ascertainable by proper means by any third parties.

117. Dresser-Rand does not disclose its trade secrets or confidential information to its competitors and has made reasonable efforts to protect their confidentiality.

118. Dresser-Rand communicated its trade secrets and confidential information to Jones and King in confidence and Jones and King knew that Dresser-Rand intended for its trade secrets to remain confidential.

119.    Wadsworth and Global Power knew that Jones and King were not authorized by Dresser-Rand to access and download the trade secrets and confidential information for the benefit of Defendants.

120.    Defendants have used Dresser-Rand's trade secrets and confidential information to compete with Dresser-Rand and are continuing to do so.

121.    As a direct and proximate result of Defendants' misappropriation of trade secrets, Dresser-Rand will continue to suffer irreparable harm.

122.    As a direct and proximate result of Defendants' misappropriation of trade secrets, Dresser-Rand has suffered substantial damages, the precise amount of which will be determined at trial.

123.    Defendants' conduct has been willful and outrageous and undertaken with reckless indifference to the rights of Dresser-Rand.

## COUNT II

### BREACH OF FIDUCIARY DUTY
### (Jones and King)

124.    Paragraphs 1 through 123 are incorporated by reference as if set forth fully therein.

125.    At all times prior to their resignations, Jones and King were employees and agents of Dresser-Rand.

126.    As agents of Dresser-Rand, Jones and King owed Dresser-Rand a fiduciary duty.

127.    Jones and King, through their actions as set forth herein, intentionally and willfully violated their fiduciary duties to Dresser-Rand by taking actions against Dresser-Rand's interest while employed by Dresser-Rand.

128.    As a direct and proximate result of Jones's and King's acts and omissions, Dresser-Rand has suffered substantial damages.

129.    Jones's and King's actions have been willful and outrageous and undertaken with reckless indifference to the rights of Dresser-Rand.

## COUNT III

## BREACH OF DUTY OF LOYALTY
### (Jones and King)

130.    Paragraphs 1 through 129 are incorporated by reference as if set forth fully therein.

131.    At all times prior to their resignations, Jones and King were employees and agents of Dresser-Rand.

132.    As agents of Dresser-Rand, Jones and King owed Dresser-Rand a duty of loyalty.

133.    Jones and King, through their actions as set forth herein, intentionally and willfully violated their duties of loyalty to Dresser-Rand by taking actions contrary to Dresser-Rand's interest while employed by Dresser-Rand.

134.    As a direct and proximate result of Jones's and King's acts and omissions, Dresser-Rand has suffered substantial damages.

135.    Jones's and King's actions have been willful and outrageous and undertaken with reckless indifference to the rights of Dresser-Rand.

## COUNT IV

## COMPUTER FRAUD AND ABUSE ACT – 18 U.S.C. § 1030
### (All Defendants)

136.     Paragraphs 1 through 135 are incorporated by reference as if set forth fully therein.

137.     In December, January, and February 2010, Jones and King, knowingly and with intent to defraud, accessed Dresser-Rand's protected computer network and files maintained on their Dresser-Rand computers – and by means of such conduct, defrauded Dresser-Rand and obtained for themselves information of substantial value – including trade secrets and confidential information.  At the time that Jones and King accessed and downloaded Dresser-Rand's documents and information, Jones, King, and Wadsworth had begun competing against Dresser-Rand and using the Company's documents and information for their own benefit.  Jones and King never disclosed to Dresser-Rand that they intended to compete against the Company.

138.     Jones's and King's unauthorized access continued until they resigned their employment with Dresser-Rand and also took place when they were employees of Global Power.

139.     Jones's and King's downloading of massive quantities of Dresser-Rand's documents and information for no legitimate purpose was in excess of their authorized access, particularly once they began to compete against Dresser-Rand.  Dresser-Rand's policies clearly state that employees are only authorized to use Company's documents and information for the benefit of the Company, and that trade secrets and confidential information are not permitted to be shared with outside parties or even Dresser-Rand employees lacking a legitimate need for that information.

140.     Jones and King accessed and copied thousands of files in excess of their authority for the benefit of Defendants.

141.    Dresser-Rand has incurred substantial costs well in excess of $5,000 investigating and responding to the conduct of Jones and King.

142.    As a direct and proximate result of this unauthorized copying, diverting, misappropriating, using and/or gaining access to Dresser-Rand's computer equipment, documents and information, including trade secrets and confidential information, through the fraudulent and unauthorized use of protected computers, and by causing losses to Dresser-Rand in excess of $5,000.00, Defendants have violated the Computer Fraud and Abuse Act and harmed the Company.

143.    As a direct and proximate result of Defendants' violation of the Computer Fraud and Abuse Act and continued unlawful use of the documents and information taken from the Company, Dresser-Rand will continue to suffer irreparable harm.

144.    Defendants' actions have been willful, malicious and outrageous and undertaken with reckless indifference to the rights of Dresser-Rand.

### COUNT V

### CONVERSION
**(All Defendants)**

145.    Paragraphs 1 through 144 are incorporated by reference as if set forth fully therein.

146.    At all times, Dresser-Rand retained all right, title, and interest in the trade secrets and other information taken by Defendants.

147.    Defendants knowingly, dishonestly, and intentionally took and retained Dresser-Rand's trade secrets and other information without authorization.

148.     Defendants' acts constitute a knowing, unlawful and intentional conversion of trade secrets and information for Defendants' economic benefit and to the economic detriment of Dresser-Rand.

149.     Defendants have refused Dresser-Rand's demands to return the trade secrets and other Dresser-Rand property that Jones and King illegitimately downloaded from their work computers or otherwise took.

150.     As a direct and proximate result of this conversion, Dresser-Rand has suffered substantial damages.

151.     Defendants' actions have been willful and outrageous and undertaken with reckless indifference to the rights of Dresser-Rand.

## COUNT VI

## UNJUST ENRICHMENT
### (All Defendants)

152.     Paragraphs 1 through 151 are incorporated by reference as if set forth fully therein.

153.     Through their misappropriation of trade secrets and confidential information and their unauthorized use of Jones's and King's Dresser-Rand computers, Defendants received a benefit from Dresser-Rand, i.e., Dresser-Rand's property to which Defendants were not entitled.

154.     Defendants have improperly, and without consent by Dresser-Rand, retained this Dresser-Rand property.

155.     Defendants had, and have, no legitimate entitlement to this Dresser-Rand property.

156.    Upon information and belief, Defendants have continued to use the ill-gotten property for their own benefit.

157.    Defendants have refused Dresser-Rand's demands to return the trade secrets, confidential information, and other Dresser-Rand property that Jones and King illegitimately downloaded from their work computers or otherwise took.

158.    The taking and retention of this benefit is both inequitable and unjust.

159.    As a direct and proximate result of Defendants' unjust enrichment, Dresser-Rand has suffered substantial damages.

160.    Defendants' actions have been willful and outrageous and undertaken with reckless indifference to the rights of Dresser-Rand.

## COUNT VII

## UNFAIR COMPETITION
### (All Defendants)

161.    Paragraphs 1 through 160 are incorporated by reference as if set forth fully therein.

162.    By virtue of the acts described above, Defendants have misappropriated trade secrets and confidential information of Dresser-Rand, and have employed unfair and deceptive practices intended to interfere with Dresser-Rand's ability to fairly compete with Defendants.

163.    Defendants have committed these acts maliciously and for the sole purpose of inflicting harm on Dresser-Rand or to benefit themselves at the expense of Dresser-Rand.

164.    As a direct and proximate result of Defendants' unfair competition, Dresser-Rand has suffered substantial damages.

165.    Defendants' actions have been willful and outrageous and undertaken with reckless indifference to the rights of Dresser-Rand.

## COUNT VIII

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (All Defendants)

166.    Paragraphs 1 through 165 are incorporated by reference as if set forth fully therein.

167.    As described above, Dresser-Rand has developed valuable trade secrets and confidential information, and the information provides Dresser-Rand with an advantage over its competitors.

168.    Dresser-Rand had a reasonable expectation of economic advantage that has been lost as a result of Defendants' improper and malicious interference through their misappropriation of Dresser-Rand's trade secrets and confidential information and deletion of other information.

169.    Upon information and belief, Defendants also have made false representations about the Company to prospective clients for the purpose of convincing the client not to hire Dresser-Rand.  These false representations had no legitimate purpose and caused damage to Dresser-Rand.

170.    As a direct and proximate result of Defendants' interference, Dresser-Rand has suffered substantial damages.

171.    Defendants' actions have been willful and outrageous and undertaken with reckless indifference to the rights of Dresser-Rand.

## COUNT IX

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Wadsworth)

172.     Paragraphs 1 through 171 are incorporated by reference as if set forth fully therein.

173.     Upon information and belief, Wadsworth knowingly aided and abetted Jones's and King's efforts to breach their fiduciary duties by acting as a facilitator and co-conspirator of the actions described herein.

174.     Upon information and belief, Wadsworth provided Jones and King with substantial assistance in breaching their fiduciary duties to Dresser-Rand.

175.     As a direct and proximate result of Wadsworth's acts, Dresser-Rand has suffered substantial damages.

176.     Wadsworth's actions have been willful and outrageous and undertaken with reckless indifference to the rights of Dresser-Rand.

## COUNT X

## BREACH OF CONTRACT
### (Jones)

177.     Paragraphs 1 through 176 are incorporated by reference as if set forth fully therein.

178.     As a condition of his employment with Dresser-Rand, Jones entered into an Intellectual Property Agreement with the Company.

179.     The Intellectual Property Agreement required that Jones keep secret and confidential all Dresser-Rand confidential information.

180.    The Intellectual Property Agreement further required that Jones return all Company property upon his separation from Dresser-Rand.

181.    Jones breached the terms of his Intellectual Property Agreement, as set forth herein.

182.    As a direct and proximate result of Jones's breach, Dresser-Rand has suffered substantial damages.

183.    Jones's actions have been willful and outrageous and undertaken with reckless indifference to the rights of Dresser-Rand.

## COUNT XI

### CONSPIRACY
### (Jones, King, and Wadsworth)

184.    Paragraphs 1 through 183 are incorporated by reference as if set forth fully therein.

185.    Upon information and belief, the Individual Defendants agreed, combined and acted with a common plan and purpose to misappropriate Dresser-Rand's trade secrets and other property by engaging in the unlawful acts described above.

186.    Upon information and belief, the Individual Defendants agreed, combined and acted with a common plan to breach Jones's and King's fiduciary and other common-law duties owed to Dresser-Rand by engaging in the unlawful acts described above.

187.    Upon information and belief, the Individual Defendants committed overt acts, as described above, including, but not limited to, the unauthorized downloading and taking of trade secrets and confidential information and competing against Dresser-Rand while Jones and King were still employees, in pursuance of the common purpose described above.

188.   As a direct and proximate result of the acts done in furtherance of the conspiracy, Dresser-Rand has been damaged, including damages to Dresser-Rand's overall business and its loss of business from specific bids, and damage in the form of expenses related to investigative and remedial actions taken to address the effects of the conspiracy.  Dresser-Rand has suffered, and will continue to suffer, these injuries.

189.   As a direct and proximate result of the Individual Defendants' conspiracy, Dresser-Rand has suffered substantial damages.

190.   The Individual Defendants' actions have been willful and outrageous and undertaken with reckless indifference to the rights of Dresser-Rand.

## JURY DEMAND

Dresser-Rand demands a trial by jury as to all claims that may be tried to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Dresser-Rand requests the following relief:

(a)   Defendants be enjoined, preliminarily until hearing, and thereafter permanently, from using or retaining any of Dresser-Rand's trade secrets or confidential information.

(b)   Defendants be directed to immediately return to Dresser-Rand all copies of the Company's documents, electronic files, and information.

(c)   Defendants be ordered to promptly produce copies of all such Company documents, electronic files, and information during the expedited discovery process related to Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction, and Other Relief.

(d)    Defendants be precluded from making or continuing to pursue bid proposals for projects for which they have misappropriated Dresser-Rand's bid information or for which Jones and/or King participated in the preparation of Dresser-Rand's bid proposal.

(e)    Dresser-Rand be awarded actual, compensatory, and punitive damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs;

(f)    Jones and King be required to disgorge their wages, including bonuses, that they received from Dresser-Rand while engaging in some or all of the above-stated unlawful activity; and

(g)    Dresser-Rand be awarded such other and further necessary and proper relief as the Court may deem just and proper.

Dated:  May 4, 2010

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP

By: _____
       Michael J. Puma
       Jonathan S. Krause
       1701 Market Street
       Philadelphia, PA  19103
       215-963-5305/5510
       mpuma@morganlewis.com
       jkrause@morganlewis.com

*Counsel for Plaintiff Dresser-Rand Company*